IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIRK MACKEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | Case No. 4:24-CV-04306 |
| STARTUP TNT LLC, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW, KIRK MACKEY, by and through the undersigned counsel, and files this, his Complaint against Defendant, STARTUP TNT LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

### JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

### PARTIES

2. Plaintiff, KIRK MACKEY (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3. Plaintiff is disabled as defined by the ADA.

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5. Plaintiff uses a wheelchair for mobility purposes.

6. In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7. Defendant, STARTUP TNT LLC (hereinafter "STARTUP TNT LLC"), is a Texas limited liability corporation that transacts business in the State of Texas and within this judicial district.

8. Defendant, STARTUP TNT LLC, may be properly served with process for service via its Registered Agent, to wit:  c/o Sokunthea Than, Registered Agent, 10720 Addicks Oaks Place, Houston, TX  77043.

## FACTUAL ALLEGATIONS

9. On or about October 12, 2024, Plaintiff attempted at being a customer at "Melita's Restaurant," a restaurant located at 9233 Clay Road, Houston, TX  77080, referenced herein as "Melita's".  Plaintiff was unable to enter the restaurant due to the barriers to access. *See* also photo of Plaintiff attached as Exhibit 1.

10. Defendant, STARTUP TNT LLC, is the owner or co-owner of the real property and improvements that Melita's is situated upon and that is the subject of this action, referenced herein as the "Property."

11. Plaintiff lives only 2 miles from the Property.

12. Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

13. Plaintiff's access to the business(es) located at 9233 Clay Road, Houston, TX 77080, Harris County Property Appraiser's property identification numbers: 0914880000022 and 0914880000027 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, STARTUP TNT LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14. Defendant, STARTUP TNT LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, STARTUP TNT LLC and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

15. Plaintiff has visited the Property once before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property within six months after the barriers to access

detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a customer to determine if and when the Property is made accessible and for Advocacy Purposes.

16. Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous continuing barriers to access.

17. Plaintiff travelled to the Property once before as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

18. Although Plaintiff did not personally encounter each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

19. Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services

offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

20. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

21. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

22. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of

        discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        \* \* \* \* \*

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

    23.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

    24.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

    25.     The Property is a public accommodation and service establishment.

    26.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

    27.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

    28.     The Property must be, but is not, in compliance with the ADA and ADAAG.

    29.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access,

dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30. Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31. Defendant, STARTUP TNT LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

32. Defendant, STARTUP TNT LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, STARTUP TNT LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

33. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing

of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

    i. In front of Vidal Hair Salon, there is a parking space with a marked access aisle, but it has no marking whatsoever that designates it as accessible, it also has no sign identifying the parking space as accessible in violation of Section 502.6 of the 2010 ADAAG standards. Moreover, there is a "no parking" sign in front of this parking space. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space. Moreover, by having a sign in front of an accessible parking space which states "No Parking", this would cause a reasonable disabled individual to believe that if they would risk being towed if they parked their vehicle in this accessible parking space, as such, this space.

    ii. Given the lack of a properly marked accessible parking space as detailed in (i) above, the total number of accessible parking spaces is inadequate and is in violation of section 208.2 of the 2010 ADAAG standards. There are thirty-three (33) marked parking spaces and zero accessible parking spaces, when there should be at least two (2) accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

    iii.    In the alternative to (i), if the parking space in front of Vidal Hair Salon is construed as an accessible parking space, the access aisle to that accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

    iv.    In the alternative to (i), if the parking space in front of Vidal Hair Salon is construed as an accessible parking space, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

    v.    Regarding the accessible ramp, there are openings in the ground surfaces with a width exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Sections 302.3 and 405.4 of the 2010 ADAAG Standards.

    vi.    In front of the accessible ramp and along the exterior accessible route, there are openings in the ground surface with a width in excess of ½ inch in violation of Section 302.3 of the 2010 ADAAG Standards. This barrier to access could cause the wheel of Plaintiff's wheelchair to get lodged in the

        opening causing difficulty and risk of having the wheelchair tip over in a struggle to get removed from the gap.

vii. In front of Vidal Hair Salon, the Property has an accessible ramp leading from the parking lot to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

viii. Due to a fence blocking the accessible route to Melita's coupled with a 3 inch vertical rise from the parking lot, the Property lacks a single continuous accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property if parked in one Section of the Property which is disconnected from another due to this barrier.

ix. Due to a fence blocking the accessible route to Melita's coupled with a 3 inch vertical rise from the parking lot, accessible entrance to Melita's Restaurant, is not located on an accessible route that is in compliance with section 402 of the 2010 ADAAG standards. This is a violation of section 206.4 of the 2010 ADAAG Standards. This barrier to access would prevent or make it very difficult and dangerous for Plaintiff or other wheelchair user from entering this public accommodation due to the barrier to access.

x. For Unit 9231, due to an approximate 1 ½ inch vertical rise that the entrance, the Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the Property.

xi. At Unit 9231, due to an approximate 1 ½ inch vertical rise that the entrance, the total vertical rise of accessible route leading from public sidewalk is greater than ½ (one-half) inch and thus, the accessible route is not ramped in compliance with Section 405 or 406, this is a violation of Section 303.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because the vertical rise in the form of stairs would make it almost impossible for Plaintiff to safely access the interior of this public accommodation.

xii. At Unit 9231, due to an approximate 1 ½ inch vertical rise that the entrance, the accessible route leading into this public accommodation contains at least one vertical rise in excess of ¼ inch in violation of Section 303.2 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to attempt to utilize the accessible route as it increases the likelihood of the wheelchair tipping.

xiii. At Unit 9231, due to an approximate 1 ½ inch vertical rise that the entrance, the maneuvering clearance of the accessible entrance is not level in violation

of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the presence of an excessive vertical rise.

xiv. There is not at least one accessible entrance to each tenant space in the building that complies with Section 404 of the 2010 ADAAG standards which is a violation of Section 206.4.5 of the 2010 ADAAG Standards.

xv. As not all entrances comply with Section 404 of the 2010 ADAAG Standards, entrances that do comply with Section 404 of the 2010 ADAAG Standards are required to have signage identified by the International Symbol of Accessibility indicating an accessible entrance, however, no such signage exists on the Property in violation of Section 216.6 of the 2010 ADAAG Standards. Moreover, there is a lack of directional signage indicating the location of the nearest accessible entrance. This barrier to access would make it difficult for Plaintiff to locate an accessible entrance on the Property.

xvi. As a result of the barrier to access identified in (ix) above, despite his intent to be a customer of Melita's Restaurant, Plaintiff was unable to enter this public accommodation and therefore was unable to determine whether there are current barriers to access present inside the restaurant. Plaintiff intends to return to this restaurant once the barriers to access are removed from the Property, however, Plaintiff does not want to be prevented from the equal use

      of Melita's Restaurant as a customer due to any unknown barriers to access that are present. For this reason, Melita's Restaurant is required to have at least one accessible restroom compliant with Sections 603, 604 and 606 of the 2010 ADAAG standards, and an inspection of Melita's Restaurant is necessary to ensure said compliance.

  xvii. Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

34. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

35. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

36. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

37.  All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

38. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

39. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, STARTUP TNT LLC, has the financial resources to make the necessary modifications. According to the Property Appraiser, the Appraised value of the Property is $905,6015.00.

40. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

41. Upon information and good faith belief, the Property has been altered since 2010.

42. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, STARTUP TNT LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

44. Plaintiff's requested relief serves the public interest.

45. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, STARTUP TNT LLC.

46. Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, STARTUP TNT LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

47. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, STARTUP TNT LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendant, STARTUP TNT LLC, in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendant, STARTUP TNT LLC, from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendant, STARTUP TNT LLC to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e) That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: November 5, 2024

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com